IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; NATURAL RESOURCES DEFENSE COUNCIL; and GREENPEACE, INC.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DIRK KEMPTHORNE, United States Secretary of the Interior; and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>　　　　Defendants.<br>_____/ | No. C 08-1339 CW<br><br>ORDER TENTATIVELY GRANTING DEFENDERS OF WILDLIFE'S MOTION FOR LEAVE TO INTERVENE |

　　Defenders of Wildlife (DOW) moves for leave to intervene in these proceedings. No party has filed a response to DOW's motion. The matter was taken under submission on the papers. Having considered all of the papers filed by DOW, the Court tentatively grants the motion.

BACKGROUND

　　Plaintiffs filed this action on March 10, 2008, charging Defendants with failing to comply with the Endangered Species Act's (ESA) deadline to issue a determination on whether the polar bear should be listed as a threatened species. On April 2, 2008,

Plaintiffs moved for summary judgment.  Defendants opposed this motion, conceding that they had failed to meet the deadline but arguing that the relief Plaintiffs sought was unjustified.

On April 28, 2008, the Court granted Plaintiffs' motion and ordered Defendants to publish their listing determination by May 15, 2008.  Defendants complied with this order and published a final rule designating the polar bear as threatened.  In addition, Defendants promulgated a special rule under section 4(d) of the ESA, which permits the Fish and Wildlife Service to specify prohibitions and authorizations that are tailored to the specific conservation needs of a particular species.  The special rule here allows certain activities that might otherwise be prohibited under the ESA or its associated regulations.

On May 16, 2008, Plaintiffs filed an amended complaint adding two claims.  The first new claim charged Defendants with violating the Administrative Procedures Act (APA) by promulgating the section 4(d) rule without first publishing a notice of proposed rule-making and giving interested persons an opportunity to comment.  The second new claim charged Defendants with violating the National Environmental Policy Act (NEPA) by promulgating the section 4(d) rule without first conducting an environmental impact statement or an environmental assessment.

On July 16, 2008, Plaintiffs filed a second amended complaint adding four new claims.  All four claims are brought pursuant to the APA and are based on Defendants' alleged failure to comply with either the ESA or the Marine Mammals Protection Act (MMPA).  The first challenges the decision to classify the polar bear under the ESA as a threatened, rather than an endangered, species.  The

second challenges the substance of the section 4(d) rule as contrary to the ESA.  The third charges Defendants with violating the ESA by failing to designate critical habitat for the polar bear.  The fourth alleges that Defendants violated the MMPA by failing to publish a list of guidelines for safely deterring polar bears through the use of non-lethal methods.

DOW is a non-profit organization dedicated to the protection of native wild animals and plants in their natural communities.  It has more than 500,000 members.  It seeks to intervene in this action for a single purpose: to challenge the substance of Defendants' section 4(d) rule as contrary to the ESA.

## DISCUSSION

To intervene as a matter of right under Rule 24(a)(2) of the Federal Rules of Procedure, an applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant.  Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1493 (9th Cir. 1995).  The Ninth Circuit applies a four-part test to motions under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately protected by the parties to the action.

Id. (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993)).

The Ninth Circuit interprets Rule 24(a)(2) broadly in favor of intervention.  Id.  In evaluating a motion to intervene under Rule

1  24(a)(2), a district court is required "to take all well-pleaded,
2  nonconclusory allegations in the motion . . . as true absent sham,
3  frivolity or other objections." Sw. Ctr. for Biological Diversity
4  v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

5  Alternatively, a court may, in its discretion, permit
6  intervention under Rule 24(b)(1)(B) by anyone who "has a claim or
7  defense that shares with the main action a common question of law
8  or fact." In exercising its discretion, a court should "consider
9  whether the intervention will unduly delay or prejudice the
10 adjudication of the original parties' rights." Fed. R. Civ. P.
11 24(b)(3).

12 DOW has satisfied the first three factors of the four-factor
13 test for intervention as a matter of right. Its members have an
14 interest in the continued existence of the polar bear in its
15 natural habitat. Because the activities currently permitted by the
16 section 4(d) rule allegedly jeopardize the polar bear's continued
17 existence by destroying its habitat, and because this action
18 challenges the validity of that rule, the disposition of this
19 action in Defendants' favor could jeopardize DOW's interest. In
20 addition, DOW moved for leave to intervene shortly after Plaintiffs
21 filed their second amended complaint, which asserted a substantive
22 challenge to the section 4(d) rule for the first time, and thus its
23 motion is timely.

24 However, DOW cannot satisfy the fourth factor of the Ninth
25 Circuit's test. In determining whether existing parties represent
26 a proposed intervenor's interests, the court should consider "(1)
27 whether the interest of a present party is such that it will
28 undoubtedly make all the intervenor's arguments; (2) whether the

4

present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." Nw. Forest Resources Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996). "Under well-settled precedent in this circuit, '[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.'" League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1305 (9th Cir. 1997) (quoting Nw. Forest Resource Council, 82 F.3d at 838) (alteration in original; additional internal quotation marks omitted). The proposed intervenor has the burden of showing that Plaintiffs will not adequately represent its interests, though that burden is "minimal." Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir. 1983).

DOW seeks to intervene to challenge the substance of the section 4(d) rule -- a claim that has already been asserted by the three Plaintiffs, Center for Biological Diversity, Natural Resources Defense Counsel and Greenpeace. Although DOW asserts that its interest in this case is more "narrow and focused" than Plaintiffs' because it would be asserting only one of the six remaining claims, it has not suggested that its interest in challenging the rule differs from Plaintiffs' in any way or that it is likely to raise any unique arguments. Nor has it demonstrated that its fundamental interest in this action -- the survival and health of the polar bear -- differs in any material respect from Plaintiffs'.

The cases DOW cites in which the interests of a proposed intervenor were found not to be adequately represented by the

5

existing parties differ from this one.  In Home Builders Association of Northern California v. United States Fish & Wildlife Service, 2006 WL 1030179 (E.D. Cal.), for instance, a property owner was allowed to intervene notwithstanding the fact that the action was brought by a homebuilders' association whose broad objective was aligned with his, because his interest in the fate of his particular land led him to have "a more specific goal" in the litigation.  Id. at *5.  Here, in contrast, DOW shares the same goal as Plaintiffs in challenging the substance of the section 4(d) rule.  Similarly, in National Resources Defense Council v. Costle, 561 F.2d 904 (D.C. Cir. 1977), a number of environmental advocacy groups challenged the Environmental Protection Agency's failure to discharge its statutory duty to regulate the release of pollutants into the waterways.  The court held that certain industry groups could intervene to ensure their participation in the implementation of a settlement agreement between the original parties that obligated the EPA to initiate rule-making proceedings on an industry-by-industry basis.  In finding that the groups had met their burden of demonstrating that their interests were not sufficiently represented by other industry intervenors, the court stated that, although the new industry groups might share an "overall point of view" with the others, the particular industries represented by the new groups were not represented by existing parties.  Id. at 913.  Here, in contrast, DOW has not shown that the interests or motivations of Plaintiffs' constituencies diverge in any respect from those of its own.

   DOW has not cited any case in which an advocacy group with interests that are indistinguishable from those of existing parties

6

has been permitted to intervene as a matter of right. And while DOW correctly notes that Plaintiffs' challenge to the substance of the 4(d) rule is only one of their six claims, this fact does not render Plaintiffs' interest in that claim "limited" in any relevant sense of the word. DOW has provided no support for its suggestion that Plaintiffs lack sufficient resources or motivation to litigate this claim vigorously and competently. Nor has it shown that it possesses unique information or knowledge relevant to challenging the section 4(d) rule. Cf. LG Elecs. Inc. v. Q-Lity Computer Inc., 211 F.R.D. 360, 365 (N.D. Cal. 2002) ("Quanta may not have the same knowledge that Apple has about the design of the Apple products, and thus may not be able to adequately represent Apple's interests in this litigation.").

Although DOW's burden in demonstrating that its interests will not be adequately represented is "minimal," it is not non-existent. DOW has not met that burden, even under the liberal standards for intervention as a matter of right.

With respect to permissive intervention, the Court is not persuaded that the current Plaintiffs will not adequately represent DOW's interests. The Court is concerned about delaying proceedings with multiple, repetitive briefs and disputes over argument time. However, the Court will grant permissive intervention if the existing Plaintiffs agree, and if all Plaintiffs agree to file a joint brief, not exceeding the page limits already set by the Court, in support of their motion for summary judgment and any other motions. DOW must also reach an agreement with the other Plaintiffs concerning the division of oral argument between them at the summary judgment hearing and further proceedings.

7

CONCLUSION

For the foregoing reasons, DOW's motion for leave to intervene (Docket No. 128) is TENTATIVELY GRANTED.  If DOW is able to satisfy the conditions for permissive intervention described above, it must file a notice of such with the Court.  The Court will then finally grant the motion.  DOW's notice must be filed within ten days of the date of this order.

IT IS SO ORDERED.

Dated: 10/2/08

CLAUDIA WILKEN
United States District Judge

8